```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
          Plaintiff,             )
                                )
     v.                         )    No.  13 C 5815
                                )       (01 CR 1115)
                                )
DIONNE GARCIA,                  )
                                )
          Defendant.            )
```

MEMORANDUM ORDER

Just a few days short of a year after this Court's August 16, 2012 imposition of a 200-month custodial sentence on Dionne Garcia ("Garcia"), she has filed a self-prepared 28 U.S.C. §2255 ("Section 2255") motion challenging that sentence. This Court has immediately conducted the review of Garcia's motion as directed by Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"), and because "it plainly appears from the motion...and the record of prior proceedings that the moving party is not entitled to relief" (id.), this Court follows the express directive called for by that Section 2255 Rule by dismissing Garcia's motion.

Something more than a decade ago Garcia and her then boyfriend Juan Duran ("Duran") were major suppliers of PCP in a large-scale conspiracy involving the distribution of large quantities of that drug--her Plea Agreement ¶6, which describes in detail her major involvement together with Duran, concludes

with this sentence:

> Defendant was directly involved in the distribution of at least approximately ten to thirty kilograms of mixtures containing PCP during the life of the conspiracy.

That led to Garcia's arrest back in December 2001, and she was then indicted, arraigned, released on bond--and she promptly fled to Mexico. As the penultimate paragraph in Plea Agreement ¶6 states:

> Defendant was subsequently arrested by federal law enforcement in December 2001. Sometime in 2002, after defendant was arraigned on the charges and was released on bond, defendant fled the Northern District of Illinois to Mexico, intending to avoid prosecution.

It was more than a decade later that Garcia was apprehended and, ably represented by criminal defense lawyer Raymond Pijon, pleaded guilty to Count One of the indictment pursuant to the terms of the April 11, 2012 Plea Agreement referred to earlier. Plea Agreement ¶9.b.i through b.iv reflected an express <u>agreement</u> between Garcia and the government that the offense level under the Sentencing Guidelines ("Guidelines") was 43, with the only potential disagreement between the parties being her entitlement or disentitlement to a 2-level reduction for acceptance of responsibility (see Plea Agreement ¶9.b.v).

That being so, the advisory Guideline under the government's version called for a life sentence (even though Garcia had no prior criminal record, so that she came within criminal history

2

category I[1]).  Even if defense counsel's argument for a 2-level reduction for acceptance of responsibility had been persuasive (as it was not to this Court), the resulting offense level of 41 coupled with a criminal history category of I would have called for a Guideline range of 324 to 405 months.

It was no doubt in light of that last-mentioned factor that the government recommended a 324-month sentence for Garcia, while Garcia's counsel urged the imposition of the lowest sentence permitted by law--the 10-year mandatory minimum sentence for the Count One offense (Plea Agreement ¶10 left both parties "free to recommend whatever sentence they deem appropriate").  At sentencing this Court considered all aspects of the factors referred to in 18 U.S.C. §3553(a) and, as indicated at the outset of this memorandum order, it imposed a 200-month sentence (far below the advisory Guideline range under any view).

It is frankly astonishing, under all of those circumstances, for Garcia to have filed her current Section 2255 motion seeking "a reduction of sentence based on the mandatory minimum."  Garcia

---

[1] During the pre-Guideline sentencing regime, when this District Court was unique in having a sentencing council whose weekly meetings accomplished the goals later sought to be attained--but with far less success--by the Guidelines, this Court's colleague Honorable William Hart was wont to refer to some defendants as "first caughters" rather than "first offenders."  In Garcia's case, as in all others where application of the Guidelines' standards called for a criminal history category of I, this Court has consistently honored that categorization.

3

advances no claim of constitutional deprivation or any other ground cognizable under Section 2255(a)--instead her sole asserted basis for relief is a combination of (1) her status as a first offender and (2) the above-mandatory-minimum sentence.

What then can explain Garcia's current filing? As she herself acknowledged in her motion, in responding to why she did not raise those issues in a direct appeal:

> Never appealed. Defense Counsel advise [sic] me not to appeal because I had waived my rights.[2]

Indeed, that brief acknowledgment might be viewed as a substantial understatement, for Plea Agreement ¶¶17.b and 17.c are framed in broad strokes:

> b. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and

---

[2] [Footnote by this Court] By sheer coincidence, just as this memorandum order was being transcribed in final form this Court received an email from the Court of Appeals containing its August 16 mandate that reflected that court's July 25 rejection of Duran's direct appeal from the 300-month custodial sentence that this Court had imposed on him. Like Garcia, Duran had entered into a plea agreement that contained a broadly framed waiver of appellate rights. Before the Court of Appeals, his appointed appellate counsel had filed an <u>Anders</u> brief seeking leave to withdraw because the appeal was frivolous and the court granted that motion and dismissed Duran's appeal on waiver grounds.

fine within the maximums provided by law, in exchange
for the concessions made by the United States in this
Plea Agreement. The waiver in this paragraph does not
apply to a claim of involuntariness, or ineffective
assistance of counsel, which relates directly to this
waiver or to its negotiation, nor does it prohibit
defendant from seeking a reduction of sentence based
directly on a change in the law that is applicable to
defendant and that, prior to the filing of defendant's
request for relief, has been expressly made retroactive
by an Act of Congress, the Supreme Court, or the United
States Sentencing Commission.

    c. Defendant understands that by pleading guilty
she is waiving all the rights set forth in the prior
paragraphs. Defendant's attorney has explained those
rights to her, and the consequences of her waiver of
those rights.

It is of course black-letter law that a Section 2255 motion, like a petition for habeas relief, cannot be used as a substitute for an appeal (or, as in this case, as an attempted end run around a waiver of appeal). Garcia's Section 2255 motion is totally without merit, and as stated at the outset Section 2255 Rule 4(b) directs dismissal of the motion. This Court so orders.

_____
Milton I. Shadur
Senior United States District Judge

Date: August 19, 2013

5